I see all counsel and Ms. Patel, I think you're up first. You may proceed. Good morning, Your Honor, and may it please the Court. My name is Pooja Patel, and I, along with my co-counsel, Mr. Vladimir Semendai, represent Petitioner Appellant Jerry Wilson. We will be splitting this argument, and I will be covering the procedural default and actual innocence claims, and my co-counsel will be covering the ineffective assistance of counsel claims. Here, the actual innocence standard under Schlepp has been used. In this case, it is undisputed that the evidence on which Wilson relies for his actual innocence claim is both credible and new. So the only issue for the Court to decide is whether it is more likely than not that the new evidence would have created reasonable doubt. And here, Your Honor, the State has previously conceded that Wallace's testimony, which is the new evidence, if found credible, would have given the jury reasonable doubt as to Wilson's guilt. This concession is unsurprising because this is a case about eyewitness testimony in the absence of physical evidence. This comes down to the likely impact of the new evidence on reasonable jurors. Here, when you have a new witness that directly undercuts the State's star witness's testimony against Wilson. When you look at this new evidence, it transforms the evidence that was in the record at trial and provides reasonable doubt as to Wilson's guilt. Here, Wallace provided specific details about the fight that occurred that night that matched the accounts of the other witnesses, including the State's other witnesses. She testified that she saw Smith-Curran drinking and being intoxicated right before the shooting. She saw Smith-Curran ask his brother for a gun and then run into the crowd and start shooting. Other witnesses heard gunshots coming from the direction of the house where Smith-Curran was in. And her description of Smith-Curran in his clothing, his attire, his hair matches other accounts of the shooter. Most notably, Wallace testified that after the shooting, she heard Smith-Curran say, yeah, I popped that person. And she provided Smith-Curran's motive for attempting to frame Wilson and that she had heard that Smith-Curran was looking for revenge on Wilson and wanted to put this all on Wilson. Ms. Patel, can I ask you a couple of questions? Wallace's testimony, the state court's finding that she was credible, and the state's statement in its brief to the Supreme Court about the effect of her testimony make this a very unusual habeas case. But we still have all kinds of procedural challenges to address here. First of all, could you address the significance of the state court's finding that Petitioner himself was not credible in his testimony about how Wallace's testimony came to his attention? Yes, Your Honor. So in the state court evidentiary hearing, the court did hold that Wilson's testimony itself was incredible or not credible. And that really goes more towards the ineffective assistance claim, if at all. And in this case, we're really looking at Wallace's testimony itself and whether it itself was credible. I know you want to focus on Wallace, but I want to understand if there is any significance to the finding about Wilson not being credible. And in particular, it sounded to me like you're saying actual innocence is a standalone claim. Is that your theory? Or is it your theory that that simply excuses the various procedural defaults with respect to the ineffective assistance claim? Yes, Your Honor. It's the latter, that we think actual innocence excuses the procedural default. And so to answer your question about Wilson's testimony at the preliminary evidentiary hearing, we don't think that that really impacts this actual innocence claim, which is really relying on the new testimony from Wallace, the affidavit from Wallace. And so the court's finding on Wilson's credibility, though Wilson's credibility talked about, his testimony talked about where Wallace's testimony came in, where he first heard of it. That doesn't actually impact the substance of Wallace's testimony, which was found credible. And we're not relying on Wilson's testimony about when he heard Wallace's testimony or affidavit for the first time for actual innocence. Could I also ask you, does your appeal depend at all upon the notes of the PCR attorney that apparently were not part of the state court record? No, Your Honor. So our actual innocence claim does not depend on those notes. But the law is clear that we can't look at evidence that was not in the record, that was not admissible when we're looking at the actual innocence claim itself. So any evidence, whether it was in the record or not, whether it was admissible or not, can be looked at at this point. I don't know how helpful that is on actual innocence itself. But then the state court was very critical of Mr. Wilson for not having, in essence, apparently told his lawyer about Ms. Wallace in particular, whether he knew her by name. He apparently helped set up the sound system before the party and so on. I thought his account here is I just wasn't there that night. Is that right? So my co-counsel, Mr. Vladimir, and I will answer this in more detail. But to answer it shortly is that his testimony is that he while he was there to help set up the sound system, he was not there during the party itself. So he was there hours before the party started. Did he know what Wallace knows or doesn't know? At the time of the trial, at the time of all when this happened, he did not know what Wallace knew or didn't know. If I could ask you about one other question, and I'm not sure whether this is better directed to you or your co-counsel. But as I was reading your brief, I read actual innocence, but I also kept thinking cause and prejudice, cause and prejudice as a means to excuse procedural defaults. And I didn't see that argued. I wasn't sure exactly why you may or may not want to tell me, but I'd invite any comment you might want to make about that. Yes, your honor. Briefly, I can say that we focused on actual innocence because of the new evidence that was presented in the form of Wallace's testimony. We didn't focus on the cause and prejudice excuse. While my co-counsel will talk briefly about prejudice as it relates to the ineffective assistance of counsel claim. But it wasn't the basis of our actual innocence claim. OK, thank you. I see that I'm out of time unless the court has any further questions. I will turn this over to my co-counsel. That's fine. Thank you. Mr. Did I pronounce that correctly? Oh, you're on. You're on mute. Thank you. Yes, that's correct. Good morning, your honors. And may it please the courts. I'm glad to hear some of that on behalf of petitioner Jerry Wilson. Your honors, this case hinged entirely on eyewitness testimony. So there's only one thing that counsel should have done here is investigate and interview all potential eyewitnesses. Yet neither Wilson's trial counsel nor his post conviction counsel did so. These errors were objectively reasonable and prejudicial, resulting in constitutionally ineffective assistance. Mr. Some NDI, if we if we reach the merits of Mr. Wilson's post conviction, I see claim the 970402 claim should add a deference apply there. Your honor, the deference should. Should not apply. Well, it should apply the same way as it applies to trial counsels. Really, our argument here is that the two standards are the same, whether it's post conviction counsel or trial counsel in a so far as both counsel should have conducted a reasonable investigation here. And neither counsel here conducted a reasonable investigation here, despite having significant facts in the record that should have flagged several obvious starting points for any reasonable investigation, all of which would have led either counsel to LaKeisha Wallace and Tamika Wallace and their testimony. For example, your honors, there are seven facts that were known to counsel, trial counsel, and subsequently, of course, the post conviction counsel here that would have led either directly to those witnesses. First, both counsel knew that there was a second party happening at the same time as the shooting at the same duplex that is at the center of this case. Counsel knew that the residents and hosts at that party were therefore present and awake and likely have some useful information or saw the shooting. Third, several participants in the fistfight that preceded the shooting exited that same duplex moments before. Trial counsel also knew that the state star witness, Smith Horan, resided at that duplex. Counsel knew that Tamika Wallace dated Smith Horan and was present at the duplex at the same time. Counsel also knew about LaKeisha Wallace and knew that she resided at that duplex. And lastly, as Judge Hamilton mentioned, counsel knew that Wilson had visited that duplex previously in the night. Now, this was several hours before Judge Hamilton wasn't, he did not know what any of the residents there knew. But any of those facts should have flagged for trial counsel that the duplex is right next to the crime scene, likely had people in it that had some relevant information. And there's really no reasonable professional judgment here, your honors, that would excuse trial counsel's failure to investigate that duplex. But do we have Glenn Kokoski on the record on this point? Your honor, we don't have his testimony in the record. There's no affidavits by either counsel, but we can surmise from the record that he did not conduct an investigation here, a reasonable investigation based on the following items. I understand the arguments you want to make. But to follow up on Chief Judge Sykes's point, I don't see you all have asked us to basically order the issuance of the writ. And I don't see how we could possibly do that. Finding on the present record that counsel were beyond a question ineffective. I would think we would need to remand for a hearing as to both trial counsel and the 974.02 counts inspectors. Your honor, I would mention that there are several portions of the record that strongly suggest there was no investigation here. I understand your point, but I don't see how a federal court declares state court counsel ineffective without a hearing in which they have an opportunity basically to defend their professional conduct. Yes. Jonathan, we think that, you know, as you, I think, understand, we think there is enough. But if the court believes otherwise, we would, of course, agree that with the court and an alternative remedy of remand for an evidentiary hearing at this point would be in order. But would there be a way how the court has told us the Supreme Court has told us in the shin case earlier this year that there are very sharp limits on the ability to order such a such a such a hearing? Why would it be available in this case? Yes, Hamilton. So the reason it's available in this case and the critical distinction between this case and the same case is that there is a right to counsel here. Now, it's undisputed that at least with with trial counsel that the Constitutional Rights Council applies. So the court can certainly order an evidentiary hearing on that. With respect to post-conviction counsel, I think under Shin, the court would then have to decide whether there is a right to counsel. We've already decided that and said that there is in the unusual procedures that Wisconsin uses. Although my colleagues who are both from Wisconsin know those procedures far better than I do. Yes, your honor. We certainly agree with that. And I think all the parties here do as well. So in that case, there's no bar to an evidentiary hearing for either trial counsel or post-conviction counsel. I'd like to mention one point particular trial counsel's failure to investigate. In addition to following up on those seven facts I mentioned before, that would have led into a duplex. Counsel also knew that at the preliminary hearing, Smith Coran admitted that others thought he was the shooter. Now the state concedes, and this is that red brief page 47, that those statements merited investigation. Again, our position is that it's fairly easy to surmise that there was no investigation here. And this is despite the fact that trial counsel knew that Smith Coran was the main witness. He was the primary basis for the criminal complaint. He was the state star witness. He was the only one that identified Wilson at the preliminary hearing. So counsel, those statements in particular, combined with that knowledge should have led counsel to investigate Smith Coran, which, of course, would have led him to the duplex and to Lakeisha Paulson's testimony. And in fact, that's the critical points, your honor. Starting with any one of multiple obvious choices for any investigation, trial counsel and post-conviction counsel would have been led directly to this critical testimony and that we have from Lakeisha Wallace. I see that I'm into my rebuttal time, unless there are any other questions the court has. We would ask that the court reverse or remand for an evidentiary hearing. Thank you very much, Mr. Whitmer. Good morning, Assistant Attorney General Jake Whitmer for the respondent Dan Cromwell. I'd like to advise the court that I'm having a technical difficulty with the video right now. I can hear you, but I can't see your faces and I can't see the timer most critically. So I'm going to watch my time, but I can't see the timer just to advise you of that. Thank you. I'd like to bring the focus back to the stand actual innocence. And I'd also like to address this contention that the state somehow conceded innocence in state. Big difference between conceding that a defendant is entitled to an evidentiary hearing has made a sufficient showing to be an evidentiary hearing. And the saying that is actually innocent. The two standards are very different. One is much higher. The other in state court, we appropriately conceded that he had made a sufficient showing to be entitled to an evidentiary hearing. That is a reasonable probability of a different result at trial if evidence were found to be true. And in this proceeding, the standard is much higher. It's that no reasonable juror would conclude beyond a reasonable doubt that the defendant is guilty of the offense. And that requires looking at the evidence that's presented and to see if any juror, that is one reasonable juror, who basically presented guilty on a reasonable doubt, then he doesn't get review of his claims. So here there are three reasons why he can't demonstrate actual innocence. First, there's just too much trial evidence that is not connected to Smith-Burren to a reasonable juror could rely in finding guilt. Second, and relatedly, Burren's testimony is not alone. It was verified by Shakira King's testimony, as well as two other witnesses who reported to law enforcement that they had seen someone fire the shots. And third, against the weight of all of this evidence, a reasonable juror would not necessarily believe Wallace's testimony that she saw something completely different, particularly where her statements are unverified. They're unproperated. And so, Mr. Whitworth, what do we do? I understand you didn't give the case away in your filing in the Supreme Court of Wisconsin in acknowledging that there should be a hearing. But that acknowledgement of the significance of what Wallace had to say, if she is believed, is paired up in this case with the state court's finding after hearing from her that he did believe her. Right, right. I've never seen anything like that in a habeas case before us. Sure. Two points in response to that. First, the state court made a limited finding that in isolation, she was credible. But it explicitly declined to weigh the new evidence that Keisha was providing with the existing trial evidence. And this is not in either of the briefs. I'm going to provide you a cite to it in the supplemental. It's it's S.A. 177, where the court expressly says, I am not a determination as to whether a jury would find the testimony of Mr. Wilson or Miss Wallace credible. He's leaving for, well, in effect, now this court to determine whether a reasonable juror could conclude at weighing the evidence together that Mr. Wilson is still guilty beyond a reasonable doubt. The second point that I would make is, again, the legal standards are very different for even for even for prevailing to receive trial in Wisconsin based on newly discovered evidence. Again, it's whether a reasonable jury would conclude differently, whether there is a reasonable probability, excuse me, a reasonable probability that a jury would conclude differently. Here, it's more likely than not that no reasonable juror would conclude a reasonable doubt in light of the new evidence. There is, again, simply too much trial evidence. I want to focus particularly on Shakira King's testimony. She's she identified Mr. Wilson from 15 away. She had seen him 20 times before this incident. She recognized him on site and she identified him to police at the hospital later that night as the shooter. Her testimony is essentially not challenged. Her credibility attempts to attack her credibility by Mr. Wilson, I think, are unpersuasive. The points that they make are that at one point, she says that she looked at him dead on. She looked over her shoulder and identified him, which seems to me that you could look at some dead on over your shoulder as well as looking straight ahead at them, I guess. So there's there's nothing testimony based just on that testimony. A reasonable juror could conclude that Mr. Wilson is guilty beyond a reasonable doubt. Now, in addition to that, there are two other witnesses, in addition to Smith current, who reports to law enforcement that they saw Mr. Wilson commit the shooting. Now, Samantha Coates, she partially recants, says, well, I'm not sure that it was him at trial, but at the same silhouette and the same height. And she describes his location that he left the scene and from the same location that King and and Smith current said that he emerged to commit the shooting. Regardless, her account of who the shooter was and where the shooter was located is inconsistent with Wallace's testimony at the evidentiary hearing that that Smith current stepped down two stairs, fired shots and then came back up. That's from a completely different look. There's a physical evidence in this case as well. And that is a handful of of pristine shell casings that were found in the location where the trial witnesses said that the shooting took place. So, I would say that the trial, the trial court's conclusion, again, that Wallace's testimony is inconsistent with Smith current and King and Coates indicated that the shooting took place, that is, in the street, not porch. There is no meaningful physical evidence attaching, verifying, corroborate Wallace's account of the shooting from the porch. So, I would say that the trial, the trial court's conclusion, again, that Wallace's testimony was worthy of belief and credible is isolated and it's, it concerns an evaluation of whether a sufficient showing was made to to get a new trial in state court. The court, of course, as Judge Hamilton, you pointed out, said that Mr. Wilson didn't make his showing and, in fact, was not credible. And I think that this is important, even in this proceeding, as the merits of the habeas claims, if one were to reach those claims, because he can't demonstrate the allegations that he's made, particularly where there's no testimony at all from either post-conviction counsel or trial counsel. And it's unclear whether, under Shin, whether he could meet the standard for an evidentiary hearing under 2254. But you agree that he was entitled to counsel under the Constitution in the 974.02 hearing, correct? Correct, yes, as this court held in Lee Kendrick. Right, okay. Another point that I would make, and this actually isn't in the brief either, so I draw the court's attention to it, is that the court says that in the term, actually, Mr. Your video, your audio dropped out there as you were telling us what case you were talking about. Oh, I'm very sorry. I'm talking about McQuiggan, the 20 McQuiggan v. Perkins, which says that one factor that's relevant to a showing of actual innocence is the diligence that the prisoner showed pursuing his claims. And here we have two years of delay from the point which he supposedly received some information either through his mother or through a letter that's sent to him in the prison, he claims, from Wallace. He has information from her, doesn't do anything about it for two years. That's relevant to whether he can demonstrate his actual innocence claim. It's not just positive, but it's a relevant factor. Mr. Whitmore, a similar question as I asked Mr. Sumandaya, if we reach the merits of Mr. Wilson's ineffective assistance of post-conviction counsel claim, should ed-pedefrance apply? I think that that is based on whether this court believes that the merits were addressed in state court. I don't I don't believe that the either of his claims were addressed on merits. The federal claims that were they were addressed rather on state law grounds were disposed of on state law grounds for two different reasons. And because they weren't addressed on the merits, that means that typically they were reviewed as justice requires. And then, of course, an opportunity for trial counsel and post-conviction counsel to testify would be necessary since we don't have either of them on the record about their investigations and their strategic choices. I would agree with that if if this court finds that this is the unusual case in which actual innocence is demonstrated. And again, I've argued that this is not such an unusual case, given the strength of some of the evidence that was presented at trial and given the fact that she's that she's testifies that there are multiple shooters. It also, in order to get it to order an evidentiary hearing, you'd have to determine that showing has been made that under that no reasonable backfinder would find the applicant guilty of the defense. That is also a strictly high standard. Mr. Woodward. Yes. Did we lose you? No. Oh, you're still there. All right. I. Please. You may proceed. I'm sorry. You have about two minutes, two and a half minutes left. Thank you so much. I'm sorry for the video problem. I just wanted to emphasize, again, some of the evidence that was provided at trial. In addition to Shakira King, who made an early and unequivocal identification of Wilson as the shooter, there are two additional witnesses beyond Smith-Curran that identify him as the shooter. And while Samantha Coates makes a partial recantation, she also identified him in a lineup. And this evidence was presented at trial. She circled her corresponding to the picture of Wilson, and she wrote on it. I'm sure is the shooter. So I think that her identification is meaning. And despite partial recantation, of course, a jury could rely on it. A jury could also rely on Ross's initial statements to the police, despite her full recantation at trial. There would be reasons that a jury could reasonably conclude that a person might not be willing to offer testimony against an accused killer at trial and believe the statements that she gave to law enforcement instead. I believe that because a reasonable juror could conclude beyond a reasonable doubt Mr. Wilson's guilt, that he fails to make the showing sufficient to be entitled to review of his claims on the merits. So I would ask this court to affirm the district court's decision. Thank you very much. Thank you, Honor. Just a couple of quick points. One, the state says that the standards here are different. But the key point is that the state admitted that Wallace's testimony, if found credible, created reasonable doubt. And that is really the important point for the actual innocence standard. The state also argues there's overwhelming evidence on the other side. But really, this was a one-sided presentation at trial. And the evidence is not nearly as overwhelming against Wilson as the state contends. We have here two witnesses that recanted. And they refused to identify witness Wilson even after they were impeached with their statements. And they told the jury that the reason they said those things before was, one, because one witness was pressured by the police and did not want to identify witness Wilson at all. And the second one believed she was identifying someone she knew, not the shooter. We also have the state relies heavily on Shakira King here, Your Honors. But she was in the middle of a fight while the shooting occurred. She also gave internally inconsistent testimony throughout the trial. She testified about different clothing, where she was, what she was doing. And notably, there was another witness, another fight participant, that said, how could I possibly see anything when I was in the middle of a fight? Well, the same thing applies to Shakira King. In fact, it is Smith Coran that was the state's keystone witness here. Without him, the state's entire case would have fallen apart. And that is the critical benefit of Wallace's testimony, because not only did she provide an alternate theory and an alternate suspect to jury, she also undercut the state's key witness, because she pointed him out as the real shooter. So faced with this testimony, the jury would have had reasonable doubt as to whether it was Wilson or Smith Coran that was the shooter. What about the theory that there were two shooters? Yes, Judge Hamilton. So that theory, there are two problems with the state's argument there. One, it completely contradicts the state's theory at trial. So the state, you know, if Wallace had testified, the state would have had to mid-trial shift their entire theory of the case. But also, even if we take that theory to heart, that in itself creates reasonable doubt. Because unlike the state's argument, there really is no physical evidence here whatsoever that tied Wilson to the crime. So if there were two shooters without any physical evidence pointing to which one of them might have done the crime, the jury would absolutely have reasonable doubt. In fact, they could not have convicted beyond reasonable doubt because they wouldn't know who was the actual shooter. Do we know what caliber weapon killed the murder victim? Your Honor, I believe that that is not actually known because there was no bullet recovered from the victim. There were several bullet casings and bullet fragments that were found in the street. And one more point on that, the stating properly says that Wallace testified that the shooting came from the porch. That's not accurate. She testified that Smith-Coran ran down a few steps and ran into the crowd shooting. And in fact, throughout the trial and the preliminary hearing, Smith-Coran was very inconsistent about where he was located during the shooting. He said he was both in the street, he was on the porch, he was on the sidewalk. But if he ran into the crowd, as Wallace says, the placement of those bullet casings would be entirely consistent with him being the shooter. Relying on the 40 caliber Smith and Wesson casings? Yes, Your Honor. Yes, Your Honor. I think the other ones were... I'm sorry, Your Honor. Did you have a question? The clean ones? The clean ones. Yes, Your Honor. I think the other ones were too crushed. It's very possible that they could have been from the gun that shot the victim here and maybe they were crushed as they were ran. But really, we have no finding. As the people were running around, they might have crushed the bullets, but we have no finding on that here. Thank you. And I just want to conclude that the court does feel that an evidentiary hearing is needed. We again would be fine with that, Your Honor. All right. Thank you very much. Our thanks to all counsel. The case is taken under advice.